UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LEVINSON BUILDING AND REALTY CORP., et al., | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 4:07CV780 HEA |
| CITY OF WILDWOOD, | ) ) ) | |
| Defendant. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 7]. Plaintiff has responded to the motion. For the reasons set forth below, Defendant's motion is denied.

**Facts and Background**[1]

Plaintiffs filed this action in the Circuit Court of the County of St. Louis, Missouri on March 20, 2007, seeking a declaratory judgment, injunction, damages, and administrative review. The Petition sets forth the following allegations:

On April 23, 2004, Plaintiff Levinson Building & Realty Corp., (Levinson), entered into a special sale contract with Plaintiffs Charles B. Wright, Jr. and Jane S.

---

[1] The recitation of the facts herein is for the purpose of this Order only and in no way relieves the parties of necessary proof thereof in later proceedings.

Wright, Trustees of the Charles B. Wright, Jr. Living Trust dated September 1, 1993, Michael Mullins and Anna Mullins, Trustees of the Mullins Family Gift Trust dated July 17, 2000, Sharon W. Pettus and Robert C. Pettus, Trustees of the Sharon W. Pettus Revocable Trust dated November 11, 2004, Charlotte M. Wright and Charles B. Wrights, Jr., a/k/a Charles B. Wright, Jr., Trustees of the Charlotte M. Wright Trust B dated October 3, 1973, and Sharon Pettus, Charles B. Wright, Jr. and the Mullins Family Gift Trust dated July 17, 2001, the general partners of PWM Properties, a Missouri partnership, (collectively the Owners) for the purchase of three (3) tracts of land consisting of approximately one hundred twenty-four (124) acres, situated west of Valley Road and North of Peppermill Drive in Wildwood, Missouri (the Property). Levinson agreed to purchase the Property for a purchase price of $7,474,800.00, contingent upon a rezoning of the Property to a classification which permits Levinson's intended use of the Property.

The Property consists of the following three (3) tracts of land:

Tract 1: Eighty (80) Acres, purchased by Charles Wright, Sr. on May 31, 1962;

Tract 2: approximately three (3) acres, purchased in two parcels. The first parcel, approximately ½ acre was purchased on November 13, 1978. The remaining 2.39 acres was purchased on December 7, 1984.

Tract 3: approximately forty (40) acres purchased on April 15, 1975.

The Property was either conveyed to the current owners during Wright, Sr.'s life, or passed to them upon his death.

When the Property was acquired and owned by the Owners and their ancestors, the Property was located in an unincorporated area of St. Louis County, Missouri. It was zoned in the "NU" Non-Urban District Regulations when the City Council adopted its Zoning Code (Chapter 1003).

On August 14, 2006, the City Council adopted Section 415.090(A), Ordinance #1324, which provides, "The "NU" Non-Urban Residence District of the City encompasses areas within which rough natural topography, geological conditions or locations in relation to urbanized areas creates practical difficulties in providing and maintaining public roads and public or private utility services and facilities. The 'NU' Non-Urban Residence District, therefore, shall promote the protection and existence of a large-lot rural development pattern."

On February 26, 1996, the Planning and Zoning Commission of the City, (the Commission), adopted the 1996 Master Plan. On the Conceptual Land use Categories Map in the Master Plan, Tracts 1 and 3 are designated as Non-Urban Residential. Tract 2 is located in the area designated as Sub-Urban Residential. The Master Plan's Conceptual Land Use Classifications describes these classifications as follows:

a. Non-Urban Residential:

This category contains the areas of the City currently zoned NU Non-Urban District. Principally, this area is located west of the State Route 109 corridor, but additional properties of similar zoning and nature are found in all quadrants of the City. The Non-Urban Residential area is generally not served by public sewer or water and is dependent upon individual systems and/or package systems for these services. Characteristically, the land area is steeply sloping, heavily vegetated, and relatively undeveloped in terms of traditional urban densities. The adjoining land use pattern is principally low density residential or parkland and access is limited to a network of rural roadways characterized by narrow widths, one-lane bridges, no shoulders, steep hills, and poor alignments. These characteristics are aesthetically desirable, but also at the same time dictate a low density residential pattern (generally three (3) acre lots or greater in size)for the future. Additionally, existing developments on lots of three (3) acres or more in these areas strongly weigh against any new development of higher densities in this land use designation.

b. Sub-Urban Residential:

This category currently contains the areas of the City currently zoned for more intensive urban designations, such as the R-1 One Acre Residence District to the R-6A 4,000 square foot Residence District. . . These two (2) areas are located east of the State Route 109 corridor and within the northeast and southeast quadrants of the City. Public sewer and water systems, along with a number of other services from additional utilities, generally serve these areas. The land's characteristics in these designations are more varied than the Non-Urban Residential areas of the City. Primarily, the land varies

> between steeply sloping to rolling topography, forested to pasture, and to some extent has been disturbed by previous development, particularly in the Caulks Creek Watershed. Surrounding land use patterns are low to medium density residential, with limited commercial and institutional development as well. Access into these areas is principally from the State Route 100 or 109 corridors onto a system of formerly rural roads somewhat improved as development progressed into these areas. Given their proximity to existing development, a low-medium density residential development pattern would be compatible in this area, subject to the environmental limitations of any given site that may require lower densities or alternative designs. With the variability of site characteristics in these areas, the appropriate zoning designations in the range of the NU Non-Urban District to the R-1 One Acre Residence District, with a minimum lot size of 15,000 square feet as part of a Planned Residential Development (PRD), are appropriate. . . The relative level of appropriateness for individual lot sizes within these zoning designations is premised on a number of variables, not withstanding [sic] surrounding development patterns and the extent of natural resource attribute restrictions exhibited by the individual sites. . .

The City adopted a Charter form of government with the adoption of the Charter of the City of Wildwood, Missouri on November 4, 1997. The City, therefore, pursuant to Section 19(a) of Article VI of the Missouri Constitution, has all powers with the general assembly of the state of Missouri has authority to confer upon any city.

Section 3.9. (b) of the Charter provides:

> Comprehensive Zoning Plan and Zoning Ordinances. A comprehensive zoning plan generally establishing appropriate zoning districts within the City shall be adopted by ordinance. The portion of any City Master Plan designating such districts and previously adopted and in effect at the time of the effective date of this Charter shall be deemed the adopted comprehensive zoning plan required by this Section. The comprehensive zoning plan shall be reviewed not less than once every ten (10) years, and amendments may be initiated by the Council and approved from time to time as provided by state law. NO amendment to such comprehensive zoning plan shall be adopted except by an affirmative vote of at least two-thirds (2/3) of the members of the City Council, or by initiative or referendum process. Zoning ordinances may be adopted or amended only to the extent that such ordinances are consistent with the comprehensive zoning plan.

According to the Petition, the City has interpreted Section 3.9 to mean that the comprehensive zoning plan and the Conceptual Land Use Classifications Map of the Master Plan are linked together such that the comprehensive zoning plan cannot be amended without first amending the Master Plan's Conceptual Land Use Classifications Map.

Prior to the filing of Petitions for Rezoning, Edward Levinson, President of Plaintiff Levinson, spoke with City officials regarding the proposed development. The City officials indicated that Levinson should postpone submitting its petitions for rezoning until the conclusion of the Master Plan review process.

An advisory group was appointed to lead the update process of the Master Plan. The advisory group declined the recommendation of the Department of

Planning to change the Property's land use classification from Non-Urban Residential to Sub-Urban Residential for the southern sixty (60) acres of the Property.

Levinson filed a Petition for Rezoning and a request for an amendment to the Conceptual Land Use Classifications Map to change the designation of the Property to Sub-Urban Residential Area.

A revised Master Plan was approved by the Planning and Zoning commission on February 21, 2006. This Master Plan eliminated the R-1A Sub-Urban classification. The City Council ratified the action of the Planning and Zoning commission on March 7, 2006.

The R-1A Sub-Urban Residential classification would have allowed a maximum density of 227 lots on the Property. The R-1 Sub-Urban Residential classification would have allowed a maximum density of 124 lots on the Property. The current NU Non-Urban classification allows a maximum density of 41 lots on the Property.

Three public hearings on Plaintiffs' Petitions for Rezoning were held on March 6, 2006, April 17, 2006 and May 15, 2006. At the March 6, 2006 hearing, the City gave Plaintiffs 30 days to provide evidence supporting their contention that it is not economically feasible to develop the Property as zoned. Plaintiffs intended

to present information at the April 3, 2006 hearing, but the City postponed the hearing and then declared that Levinson failed to meet its deadlines. At the April 17, 2006 meeting, Levinson provided an appraisal report. At or before the May 15, 2006 meeting, Levinson provided an Addendum to this report. These indicated that it would be economically infeasible to develop and market the Property under the Non-Urban Residence zoning classification.

At the June 19, 2006 meeting, the Planning and Zoning commission voted to accept the Department of Planning's recommendation and deny the Petitions for Rezoning. On July 17, 2006, the Planning and Zoning commission voted to approve the letter of recommendation to the City Council, prepared by the Department of Planning, which recommended the denial of the Petitions for Rezoning.

At the City Council meeting of August 28, 2006, Levinson requested that the City Council table the public hearing so Plaintiffs could revise their site plan with a lower lot density in order to comply with eh City's recently revised minimum density requirement of the Sub-Urban Zoning of the 2006 Master Plan--one lot per acre or one hundred twenty-four lots. The City Council refused the request and rescheduled the hearing on the pending Petitions for Rezoning for September 11 2006. As a result of the refusal, Plaintiffs were required to proceed with a rezoning request in a zoning district that no longer existed.

On September 25, 2006, the City Council accepted the Planning and Zoning commission's recommendation to deny the Petitions for Rezoning. Under protest, Plaintiffs filed a Petition for Review of the resolution with the City Clerk and City Attorney on October 3, 2006. A Supplement to the Petition was filed on October 19, 2006. A hearing on the Petition for Review was held on December 7, 2006. On February 15, 2007, the Board of Administrative Review adopted the City's proposed Order and Recommendation, denying the requests set forth in the Petition for Review and Supplement to the Petition. The City Council unanimously voted to accept and approve the Board's recommendation at its March 12, 2007 meeting.

Plaintiffs seek declaratory and injunctive relief against Defendant with respect to the application of the Master Plan *vis a vis* the Property. Plaintiffs also seek damages for the alleged *per se* taking of the Property in that the classification allegedly deprives Plaintiffs of all of the economically beneficial or productive use of the Property as it was and is economically infeasible to develop and market the Property under the classification, without just compensation. Plaintiffs allege administrative or regulatory taking and inverse condemnation without just compensation. Plaintiffs also claim the application of the Master Plan constitutes improper or illegal special legislation and has been improperly and illegally applied

retroactively and retrospectively to Plaintiffs. Finally, Plaintiffs allege that they were deprived of a protected property interest without just compensation in violation of the United States and Missouri Constitutions and seek recovery pursuant to 42 U.S.C. §§ 1983 and 1988. In addition to injustice and declaratory relief, Plaintiffs seek damages and administrative review of Defendant's actions.

Defendant moves to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Count I due to Plaintiffs' failure to exhaust their administrative remedies; Count IIA (per se taking) in light of plaintiffs' failure to allege an actual physical invasion of the Property; Count IIC alleging illegal special legislation because Article III, §§40(28) is inapplicable on its face; and 40(30) is inapplicable because the elimination of the R-1A Residence District was a general law, not a "local or special law"; and Article I, § 13 of the Missouri Constitution is inapplicable because elimination of the R-1A Residence District did not constitute a law that was retrospective in its operation; and Article I, § 10 of the United States Constitution is inapplicable because the *ex post facto* clause applies only to criminal conduct and statutes; Count VIII, asserting that the City Council's denial of the requested rezoning was a legislative act not subject to administrative review.

**Discussion**

The purpose of a motion to dismiss is to test the sufficiency of the complaint.

On May 21, 2007, the Supreme Court determined that *Conley v. Gibson's*, 355 U.S. 41, 45-46 (1957), "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1969 (May 21, 2007). Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Supreme Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. The Supreme Court explained that this new standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.*

When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true. *Id.* at 1965. All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997).

## Count I

Defendants argue that Plaintiffs have failed to exhaust their administrative

remedies with respect to Count I, which seeks declaratory and injunctive relief. Plaintiffs seek a declaration that the Natural Resource Protection Standards and Public Space Ordinance are unconstitutional "as applied" to the Property because neither the Missouri Constitution nor the Revised Statutes of Missouri authorize the City to enact and enforce a confiscatory ordinance that deprives Plaintiffs of all of the economically beneficial use of forty six percent of their Property. Defendant argues that in order for Plaintiffs to seek this type of declaratory relief, they must go through the steps for obtaining site development plan approval. In order for the development plan to be approved, it must comply with Wildwood's Natural Resource Protection Standards. This may result in a determination that certain areas are not suitable for development. The Director of Planning for the City is authorized to decrease the acreage of the resource protection area by up to 5% upon written request of an applicant. The City Council may further reduce, or eliminate altogether the resource protection area upon request by an applicant.

The Public Space Ordinance sets forth a formula for determining the amount of public space that must be provided in a new development. The City may accept from the developer an equivalent amount of public space in another nearby location or the developer may pay to the City of Wildwood a fee in lieu of dedication which would be used to address the public space needs attributable to the development.

The Ordinance sets forth a formula for calculating the amount of the fee in lieu of public space.

Defendant argues that before a developer can submit a site development plan for approval, the developer must know the number, size and location of lots in the development. These depend on the density permitted by the applicable zoning district. Defendant argues that a site development plan for the Property cannot be approved until the proper zoning classification has been determined: *i.e.*, whether the property is to be zoned Non-Urban Residence District or R-1A Residence District. Based on the zoning, the number of lots significantly changes. Because a site development plan has not been approved, the specifics of the Natural Resource Protection Standards and Public Space Ordinances have not been applied to the Property.

Because these Ordinances have yet to be applied to the Property, since there has been no site development plan approval, Plaintiffs' claims that they are unconstitutional "as applied" to the Property are premature. Plaintiffs imply in their opposition that it would be futile for them to proceed with the administrative remedies (the City. . . seeks to drag Plaintiffs needlessly and repeatedly through the same process in which the Board of Administrative Review has already refused to consider the jurisdictional and Constitutional Challenges"). This allegation is not,

however, contained in the Petition, rather, Plaintiffs merely boldly allege that the Ordinances are unconstitutional as applied to the Property.  Under the newly annunciated dismissal standard, such allegations are insufficient to state a claim for relief with respect to this aspect of Count I.  Plaintiffs will be given leave to amend Count I to allege either exhaustion or futility.

### Count IIA

Defendants seek dismissal of Count IIA because Plaintiffs have not alleged a physical taking of the Property.  Plaintiffs have alleged that Defendant's failure to rezone constitutes a *per se* taking of the Property and the Non-Urban Residential District Classification deprives Plaintiffs of **all** of the economically beneficial or productive use of the Property.  The Petition further sets forth that the Property is now in an invalid zoning classification.  Keeping in mind the purpose of a motion to dismiss and construing these allegation in the light most favorable to Plaintiffs, the Petition sets forth enough to give notice to Defendant of the claim.  *See Clay County ex rel. County Com'n of Clay County v. Harley and Susie Bogue, Inc.* 988 S.W.2d 102, 106 -107 (Mo.App. W.D.,1999)

 ("There are no 'set formulas' for determining when a regulation goes too far. *Harris,* 755 S.W.2d at 730.  Generally, courts make that determination on a case-by-case basis. *Id.*  The United States Supreme Court has recognized only two

situations where a property owner is entitled to compensation for a regulatory taking without a 'case specific inquiry.' *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). These two situations are (1) when a regulation causes an actual physical invasion of property; and (2) when a regulation denies 'all economically beneficial or productive use of land.' *Id.*"). At this early stage of this litigation, Count IIA survives the sufficiency attack.

### Count IIC

Count IIC alleges that Defendant's elimination of the R-1A Residence District Classification was not special legislation. By virtue of the specific constitutional citations made by Plaintiffs, the Court agrees. Article III §§40(28) and (30) clearly do not apply to the facts as alleged in the Petition. Section 28 applies to the "granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity. . ." It is not alleged that Defendant granted anything to anyone.

Section 30 prohibits the general assembly from passing any local or special law where a general law can be made applicable and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on the subject. It is not alleged that the repeal of

situations where a property owner is entitled to compensation for a regulatory taking without a 'case specific inquiry.' *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). These two situations are (1) when a regulation causes an actual physical invasion of property; and (2) when a regulation denies 'all economically beneficial or productive use of land.' *Id.*"). At this early stage of this litigation, Count IIA survives the sufficiency attack.

### Count IIC

Count IIC alleges that Defendant's elimination of the R-1A Residence District Classification was not special legislation. By virtue of the specific constitutional citations made by Plaintiffs, the Court agrees. Article III §§40(28) and (30) clearly do not apply to the facts as alleged in the Petition. Section 28 applies to the "granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity. . ." It is not alleged that Defendant granted anything to anyone.

Section 30 prohibits the general assembly from passing any local or special law where a general law can be made applicable and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on the subject. It is not alleged that the repeal of

the R-1A District was limited solely to Plaintiffs. As such, it appears from the Petition that this elimination applies to all persons and does not fall within the purview of Section 30. Plaintiffs seek leave to amend this Count to state a claim under the Equal Protection Clause. Leave will be granted, with the admonition that in order to properly plead such a claim, the standards set forth in *Twombly* must be satisfied to survive scrutiny.

Plaintiffs' claim that the elimination of the R-1A District is unconstitutional because it entails a retrospective application of a law must be dismissed as pled. The Petition fails to set forth any retrospective application of the elimination with respect to Plaintiffs. Although Plaintiffs allege that they were advised to "wait" until the City tinkered with the Master Plan, the Petition does not claim that there was any action pending at the time the elimination occurred. As such, the Petition fails to state a claim.

**Count VIII**

Count VIII seeks administrative review of the Board and the City Council's decisions regarding the rezoning. Plaintiffs recognize that "zoning, rezoning requests and denials of rezoning requests are legislative matters. . ." while arguing that their zoning requests are not subject to provisions of Chapter 150 of the city's Code of Administrative Procedure. The Court agrees with this principle of Missouri

law.  "In Missouri, zoning, rezoning and refusals to rezone are considered to be legislative acts, not quasi-judicial acts.  *E.g., Erigan Company, Inc. v. Town of Grantwood Village,* 632 S.W.2d 495, 496 (Mo.App.1982).  The review of the local legislative body's grant or denial of rezoning is not initiated in a trial court by direct appeal on the record made before the legislative body, rather review is initiated by a plenary action, such as the request for a declaratory judgment to declare the grant or denial of rezoning to be a deprivation of rights. *See, e.g. Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.1971).  *Hoffman v. City of Town and Country,* 831 S.W.2d 223, 224 -225 (Mo.App. E.D. 1992).  See also, *State ex rel. Helujon, Ltd. v. Jefferson County,* 964 S.W.2d 531, 535 -536 (Mo.App. E.D.,1998)("Missouri falls among the large group of jurisdictions that views the exercise of zoning power as a legislative function, rather than a quasi-judicial or administrative function. *Heidrich,* 916 S.W.2d at 248."); *Moore v. City Of Parkville*, 156 S.W.3d 384, 391 (Mo.App. W.D.,2005)("[Z]oning, rezoning, and refusals to rezone are legislative rather than quasi-judicial acts. *Fairview Enters., Inc. v. City of Kansas City,* 62 S.W.3d 71, 76 (Mo.App. W.D.2001); *Hoffman v. City of Town & Country,* 831 S.W.2d 223, 224 (Mo.App. E.D.1992).").  In that Count VIII seeks administrative review of the denials of their requests for rezoning, Count VIII fails to state a cause of action under Missouri law and must be

- 17 -

dismissed.

## Conclusion

Certain portions of the Petition fail to state a cause of action as pled. Plaintiffs have sought, and are given, leave to amend. Count VIII fails to state a claim under Missouri law and will therefore be dismissed. The Motion to Dismiss is not well taken with regard to those claims articulated herein.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiffs are given leave to amend Counts I and IIC.

**IT IS FURTHER ORDERED** that Count VIII is dismissed.

Dated this 16th day of August, 2007.

_____
   HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE